MICHAEL E. HEYGOOD,
PSC Member/MDL No. 2672-CRB
Texas Bar No. 00784267
CHARLES MILLER,
ESQ./SBN: 276523
**HEYGOOD, ORR & PEARSON**
6363 North State Highway 161
Suite 450
Irving, Texas 75038
Telephone: (214) 237-9001
Facsimile: (214) 237-9002

Admission *Pro Hac Vic*e to be Sought for:

ERIC D. PEARSON,
Texas Bar No. 15690472
**HEYGOOD, ORR & PEARSON**
6363 North State Highway 161
Suite 450
Irving, Texas 75038
Telephone: (214) 237-9001
Facsimile: (214) 237-9002

**Attorney for Plaintiffs**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| MICHAEL DELAET, INDIGO DUTTON FRED GARCIA, et al. | ) ) ) | |
| Plaintiffs | ) ) | CASE NO. _____ |
| vs. | ) ) | **COMPLAINT AND JURY DEMAND** |
| AUDI AG and AUDI OF AMERICA, LLC, | ) ) | |
| Defendants. | ) ) | |

## **PRELIMINARY STATEMENT**

1.      The Plaintiffs (identified below in paragraphs 10-100 infra) bring this Complaint

(the "Complaint") against Defendants Audi AG and Audi of America, LLC ("Defendants" or

"Audi") seeking damages and other relief for Audi's installation of illegal defeat devices on their

vehicles.  Audi installed these "defeat devices" to skirt governmental emissions regulations by fooling the consumers and regulators into believing that the vehicles emitted far less carbon dioxide gas ("$CO_2$") than they emit in real-world driving conditions.

2.      When Plaintiffs purchased or leased their vehicles, they did not know that the vehicles had illegal defeat devices.  Audi designed these defeat devices to clandestinely reduce carbon dioxide emissions and to increase fuel efficiency when the vehicles are being tested for emissions and fuel efficiency.  But when the vehicles are being driven on the road, they emit significantly more $CO_2$ than Audi advertised and more than is allowed by law.

3.      The vehicles containing the illegal $CO_2$ defeat devices include at least those vehicles Audi equipped with (a) a ZF 8HP55 "AL 551" transmission, including, but not limited to, the A6, A7, A8, Q5, and Q7 models and (b) a DL 501-7Q "DL 501" transmission, including, but not limited to, the Audi S4, S5, S6, S7, and S8 models (collectively the "Fraudulent Vehicles").

4.      Audi sold or leased the Fraudulent Vehicles to Plaintiffs by falsely representing that they complied with relevant emissions standards when in normal use.  And Audi concealed—and failed to inform—Plaintiffs that Audi had installed illegal emissions defeat devices on their vehicles.  Audi also falsely represented the fuel efficiency of the Fraudulent Vehicles.

5.      Plaintiffs have sustained damages due to Audi's conduct in secretly installing defeat devices on their vehicles.  If Plaintiffs had known about the defeat devices, they would not have purchased or leased the Fraudulent Vehicles at all.  Or, if Audi had disclosed the existence of the defeat devices and taken the necessary mitigation efforts to make the Fraudulent Vehicles legal to sell, Plaintiffs would have paid significantly less for them.  Plaintiffs overpaid for their

vehicles (which do not provide the performance, fuel efficiency, and cleanliness that Audi advertised) and the value of their vehicles has diminished now that the existence of the defeat devices has been uncovered.

## JURISDICTION AND VENUE

6.      Pursuant to 28 U.S.C. § 1332(d)(11), this Court has jurisdiction over this case because it is a mass action under the Class Action Fairness Act ("CAFA").  This Court has subject matter jurisdiction over this case under CAFA because:  (1) this is a civil action in which the monetary claims of more than 100 plaintiffs are proposed to be tried jointly (2) the Plaintiffs' claims involve common questions of law or fact; (3) the total amount in controversy exceeds $5 million, exclusive of interest and costs; (4) each plaintiff in this lawsuit is seeking more than $75,000, exclusive of interest and costs; and (5) there is minimal diversity because at least one of the plaintiffs is a citizen of a different state than one of the defendants.

7.      Pursuant to 28 U.S.C. § 1331, this Court has also has jurisdiction over this case because each of the Plaintiffs has asserted a claim under the Magnuson - Moss Act seeking damages in excess of $50,000 exclusive of interest and costs (15 U.S.C. §§ 2301, et seq.). Therefore, Plaintiffs' claims arise under the laws of the United States.

8.      The Court has subject matter jurisdiction over this case for the reasons discussed above (*see* discussion *supra*).  This Court also has personal jurisdiction over the Defendants because, at all relevant times, they designed, manufactured, sold, distributed, promoted and placed into the stream of commerce in California numerous Audi automobiles, including the automobiles at issue in this case.  In addition, the fraudulent statements, breaches of contract, and breaches of warranty at issue in this case occurred, in part, in this District.  In addition, the claims at issue in this this case arise, in part, from Audi's contacts with California.  The

Defendants also conduct business in California and the causes of action asserted herein arose from and are connected to purposeful acts taken by Defendants in California.  Audi's contacts with California were continuous and systematic.

9.      Venue is proper in this District because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.  Audi has conducted extensive business in this District, including, without limitation, marketing, advertising, selling, and leasing the Fraudulent Vehicles in this district.  The Plaintiffs listed in paragraphs 10-18 below reside in this district and purchased their Fraudulent Vehicles in this District.

## PARTIES

### Plaintiffs

### California Plaintiffs
**Northern District of California Plaintiffs**

10.      Plaintiff Michael DeLaet is a citizen of California residing in San Mateo County, California.  Mr. DeLaet purchased a new 2014 Audi Q7 3.0 gasoline vehicle from Rector Motor Car Company in Burlingame, San Mateo, County, California.

11.      Plaintiff Indigo Dutton is a citizen of California residing in Contra Costa County, California.  Ms. Dutton purchased a new 2014 Audi Q5 3.0 gasoline vehicle from Audi of Oakland in Oakland, Alameda County, California.

12.      Plaintiff Fred Garcia is a citizen of California residing in Monterey County, California.  Mr. Garcia purchased a new 2015 Audi Q7 3.0 gasoline vehicle from Audi of Monterey in Seaside, Monterey County, California.

**Other California Plaintiffs**

13.     Calvin Chung and Janice Chung are citizens of California residing in Los Angeles County, California.  Mr. Chung leased a new 2015 Audi Q7 3.0 gasoline vehicle from Audi of Beverly Hills in Beverly Hills, Los Angeles County, California.

14.     Sharon Chakon is a citizen of California residing in Los Angeles County, California.  Ms. Chakon leased a new 2014 Audi Q7 3.0 gasoline vehicle from Keyes Audi in Valencia, Los Angeles County, California.

15.     Shon Chakon is a citizen of California residing in Los Angeles County, California.  Mr. Chakon leased a new 2016 Audi A8 3.0 gasoline vehicle from Rusnak/Westlake Audi in Thousand Oaks, Ventura County, California.

16.     Rodrigo Delgadillo is a citizen of California residing in Riverside County, California.  Mr. Delgadillo leased a new 2015 Audi Q7 3.0 gasoline vehicle from Walters Audi in Riverside, Riverside County, California.  Mr. Delgadillo later purchased the Q7 before he learned about the facts giving rise to this lawsuit.

17.     Carl Brandon Dubberly is a citizen of Georgia residing in Appling County, Georgia.  Mr. Dubberly purchased a used 2013 Audi A6 3.0 gasoline vehicle from Audi of Downtown, LA in Los Angeles, Los Angeles County, California.

18.     Lisa Duron is a citizen of California residing in Los Angeles County, California.  Ms. Duron leased a new 2015 Audi Q7 3.0 gasoline vehicle from Keyes Audi in Van Nuys, Los Angeles County, California.  Ms. Duron also leased a new 2012 Audi A6 3.0 gasoline vehicle (and later purchased it) from Keyes Audi in Van Nuys, Los Angeles County, California.

19.     Levi Geinert is a citizen of Minnesota residing in Hennepin County, Minnesota. Mr. Geiner purchased a used 2012 Audi Q7 3.0 gasoline vehicle from DCH Audi in Oxnard, Ventura County, California.

**Alabama Plaintiffs**

20.     Pete and Mary Allen are citizens of Alabama residing in Jefferson County, Alabama.  The Allens purchased a used 2013 Audi A8 3.0 gasoline vehicle at Highline Imports in Birmingham, Jefferson County, Alabama.

21.     David Blumenthal is a citizen of Alabama residing in Jefferson County, Alabama. Plaintiff Diamond Rubber Products is a corporation organized and existing under the laws of Alabama with a principal place of business in Birmingham, Alabama.  Diamond Rubber Products purchased a new 2015 Audi Q7 3.0 gasoline vehicle from Tom Williams Audi in Birmingham, Jefferson County, Alabama.  Diamond Rubber Products leased the vehicle to Mr. Blumenthal.

22.     Michael and Jaime Haley are is citizens of Alabama residing in Jefferson County, Alabama. Purchased new 2016 Audi A6 3.0 gasoline vehicle from Tom Williams Audi in Birmingham, Jefferson County, Alabama.

23.     Richard Norman is a citizen of Alabama residing in Baldwin County, Alabama. Mr. Norman leased a new 2014 Audi Q7 3.0 gasoline vehicle from Dean McCrary Audi in Mobile, Mobile County, Alabama.

24.     Ken Peer is a citizen of Florida residing in Escambia County, Florida.  Mr. Peer purchased a new 2017 Audi Q7 3.0 gasoline vehicle from Dean McCary Audi in Mobile, Mobile County, Alabama.  Mr. Peer's wife, Gwyn Peer, is a co-owner of the vehicle.

25.     Steve Womble is a citizen of Alabama residing in Montgomery County, Alabama. Mr. Womble purchased a used 2012 Audi A6 3.0 gasoline vehicle from Auto Connection in Montgomery, Montgomery County, Alabama.

26.     Willie Jordan is a citizen of Tennessee residing in Lincoln County, Tennessee. Mr. Jordan purchased a used 2012 Audi S5 4.0 gasoline vehicle from Autoplex 528 in Huntsville, Madison County, Alabama.

27.     Eria Kincaid is a citizen of Alabama residing in Madison County, Alabama.  Mr. Kincaid purchased a new 2017 Audi Q7 3.0 gasoline vehicle from Hiley Cars in Huntsville, Madison County, Alabama.

28.     Douglas Whitmore is a citizen of Alabama residing in Mobile County, Alabama. Mr. Whitmore purchased a used 2014 Audi A7 3.0 gasoline vehicle from Dean McCrary Audi in Mobile, Mobile County, Alabama.

29.     Pravinbhai Patel is a citizen of Alabama residing in Elmore County, Alabama. Mr. Patel purchased a new 2014 Audi Q7 3.0 gasoline vehicle from Jim Ellis Audi in Atlanta, DeKalb County, Alabama.

**Alaska Plaintiffs**

30.     Jeffrey Duffield is a citizen of Alaska residing in Natanuska-Susitna Brough County, Alaska.  Mr. Duffield purchased a new 2014 Audi S4 3.0 vehicle from Kendall Audi in Anchorage, Anchorage County, Alaska.


**Arkansas Plaintiffs**

31.     Plaintiff David Lupo is a citizen of Arkansas residing in Jefferson County, Arkansas.  Mr. Lupo purchased a new 2014 Audi Q5 3.0 gasoline vehicle from Parker Audi in

Little Rock, Pulaski County, Arkansas.  Mr. Lupo's wife, Susan Lupo, is a co-owner of the vehicle.

32.     Eddie Higgins is a citizen of Arkansas residing in Pulaski County, Arkansas.  Mr. Higgins purchased a used 2013 Audi A7 3.0 gasoline vehicle from Parker Audi in Little Rock, Pulaski County, Arkansas.

## Arizona Plaintiffs

33.     Leslie Cohen is a citizen of Pennsylvania residing in Erie County, Pennsylvania.  Ms. Cohen leased a new 2015 Audi A6 from Audi North Scottsdale in Scottsdale, Maricopa County, Arizona.

34.     Emerald Greig is a citizen of Arizona residing in Maricopa County, Arizona.  Ms. Greig purchased a used 2013 Audi A6 3.0 gasoline vehicle from Audi North in Scottsdale, Maricopa County, Arizona.

35.     Mark Lum is a citizen of Arizona residing in Maricopa County, Arizona.  Mr. Greig purchased a used 2013 Audi S5 gasoline vehicle from Audi North in Scottsdale, Maricopa County, Arizona.

36.     Vasile Pop is a citizen of Arizona residing in Maricopa County, Arizona.  Ms. Pop purchased a used 2016 Audi A8 4.0 gasoline vehicle from Audi Peoria in Peoria, Maricopa County, Arizona.

37.     Robert Plous is a citizen of Arizona residing in Maricopa County, Arizona.  Mr. Plous purchased a new 2012 Audi A7 3.0 gasoline vehicle from Audi N. Scottsdale in Phoenix, Maricopa County, Arizona.

38.     Daniel Nascarella is a citizen of Arizona residing in Pima County, Arizona.  Mr. Nascarella purchased a new 2016 Audi A7 3.0 gasoline vehicle from Audi of Tucson in Tucson, Pima County, Arizona.

39.     James Dykes is a citizen of Arizona residing in Coconino County, Arizona.  Mr. Dykes purchased a new 2014 Audi S5 3.0 gasoline vehicle from Audi N. Scottsdale in Phoenix, Maricopa County, Arizona.

40.     Steve Kosmiski is a citizen of Arizona residing in Maricopa County, Arizona.  Mr. Kosmiski purchased a used 2012 Audi S4 3.0 gasoline vehicle from Beepi, in Phoenix, Maricopa County, Arizona.

41.     Paul Antseliovch is a citizen of Arizona residing in Maricopa County, Arizona.  Mr. Antseliovch purchased a new 2015 Audi A8 3.0 gasoline vehicle from Audi N. Scottsdale in Phoenix, Maricopa County, Arizona.

**Colorado Plaintiffs**

42.     Kenvir Dixon is a citizen of Colorado residing in Arapahoe County, Colorado.  Mr. Dixon purchased a new 2016 Audi A7 3.0 gasoline vehicle from Audi in Denver, Arapahoe County, Colorado.

43.     Jason Hansen is a citizen of Colorado residing in El Paso County, Colorado.  Mr. Hansen purchased a new 2013 Audi A7 3.0 gasoline vehicle from Audi in Boulder, Boulder County, Colorado.

44.     Thor Wishart is a citizen of Florida residing in Escambia County, Florida.  Mr. Wishart purchased a used 2015 Audi A8 3.0 gasoline vehicle from Prestige Imports in Lakewood, Jefferson County, Colorado.

**Connecticut Plaintiffs**

45.     Beverly Carswell is a citizen of Connecticut residing in Fairfield County, Connecticut.  Ms. Carswell purchased a new 2012 Audi Q5 3.0 gasoline vehicle from Audi of Fairfield in Fairfield County, Connecticut.

46.     Michael and Camilla Medeiros are citizens of Connecticut residing in Fairfield County, Connecticut.  Mr. and Mrs. Medeiros purchased a used 2012 Audi A6 3.0 gasoline vehicle from Audi Fairfield in Fairfield, Fairfield County, Connecticut.

47.     Scott Ragaglia is a citizen of Connecticut residing in Litchfield County, Connecticut.  Mr. Ragaglia purchased a used 2015 Audi A8 3.0 gasoline vehicle from Autohouse of Luxury LLC in Plantsville, Hartford County, Connecticut.

48.     Ilario Suppa is a citizen of Connecticut residing in New Haven County, Connecticut.  Mr. Ilario leased a new 2015 Audi Q7 3.0 gasoline vehicle from Valenti Audi Motors in Watertown, Litchfield County, Connecticut.

49.     Sam Eisner is a citizen of Connecticut residing in Faifield County, New York. Mr. Eisner purchased a used 2012 Audi A7 3.0 gasoline vehicle from New Country Audi in Greenwich, Fairfield County, Connecticut.

50.     Richard Zobkiw is a citizen of New York residing in Nassau County, Connecticut. Mr. Zobkiw purchased a used 2012 Audi Q7 3.0 gasoline vehicle from Audi in Faifield, Fairfield County, Connecticut.

51.     Radhy Pena is a citizen of Massachusetts residing in Suffolk County, Massachusetts.  Mr. Pena purchased a used 2013 Audi A8 4.0 gasoline vehicle from Champagne Motor Car in Willimantic, Windham County, Connecticut.

**Florida Plaintiffs**

52.    Jason Andis and Rodiana Andis are citizens of Florida residing in Collier County, Florida.  Mr. and Mrs. Andis leased a new 2016 Audi A6 3.0 gasoline vehicle from Audi Coral Springs in Coral Springs, Broward County, Florida.

53.    Constantine Andritsakis is a citizen of Florida residing in Pinellas County, Florida.  Mr. Andritsakis purchased a used 2013 Audi S5 gasoline vehicle from Exotic Motorcars in Tarpon Springs, Pinellas County, Florida.

54.    Alexander Bahadori is a citizen of Florida residing in Hernando County, Florida. Mr. Bahadori purchased a used 2014 Audi A6 3.0 gasoline vehicle from Crown Audi in Clear Water, Pinellas County, Florida.

55.    Aaron Bennett is a citizen of Florida residing in Broward County, Florida.  Mr. Bennett purchased a used 2012 Audi S4 gasoline vehicle from Ed Morse Cadillac in Delray Beach, Palm Beach County, Florida.

56.    Stephen Courson is a citizen of Florida residing in Alachua County, Florida.  Mr. Courson purchased a used 2012 Audi A6 3.0 gasoline vehicle from Carmax in Gainesville, Alachua County, Florida.

57.    Radu Dodea is a citizen of Florida residing in Broward County, Florida.  Mr. Dodea purchased a new 2012 Audi Q5 3.0 gasoline vehicle from Prestige Motorcar Imports in North Miami Beach, Miami-Dade County, Florida.  The vehicle is co-owned by Mr. Dodea's spouse, Yana Dodea.

58.    Walter Everton is a citizen of Florida residing in Hillsborough County, Florida. Mr. Everton purchased a new 2014 Audi Q7 3.0 gasoline vehicle from Audi Tampa in Tampa, Hillsborough County, Florida.

59.     Peter Fanous is a citizen of Florida residing in Pinellas County, Florida.  Mr. Fanous leased s 2014 Audi A6 3.0 gasoline vehicle from Crown Audi in Clearwater, Pinellas County, Florida.

60.     Michael and Donna Field are citizens of Florida residing in Pinellas County, Florida.  Mr. and Ms. Field purchased a used 2012 Audi A6 3.0 gasoline vehicle from Audi Coral Springs in Coral Springs, Florida.

61.     Jann Flowers is a citizen of Florida residing in Palm Beach County, Florida.  Ms. Flowers leased an Audi A6 in Florida.

62.     Cynthia Hinchey is a citizen of Florida residing in Charlotte County, Florida.  Ms. Hinchey purchased a used 2015 Audi Q7 3.0 gasoline vehicle from Audi Fort Lauderdale in Fort Lauderdale, Broward County, Florida.

63.     Dawn Jamison is a citizen of Florida residing in Hendry County, Florida.  Ms. Jamison purchased a used 2014 Audi Q7 3.0 gasoline vehicle from The Collection Coral in Gables, Miami-Dade County, Florida.

64.     Melanie Jenkins is a citizen of Florida residing in Manatee County, Florida.  Ms. Jenkins purchased a new 2014 Audi Q7 3.0 gasoline vehicle from Suncoast Audi in Sarasota, Sarasota County, Florida.

65.     Lawrence J. Mahon is a citizen of Florida residing in Leon County, Florida.  Mr. Mahon leased a new 2014 Audi Q5 3.0 gasoline vehicle from Audi Jacksonville in Jacksonville, Duval County, Florida.

66.     Sharon McDuffie is a citizen of South Carolina residing in Florence County, South Carolina.  Ms. McDuffie purchased a used 2012 Audi A8 3.0 gasoline vehicle in Hollywood, Broward County, Florida.

67.     Walter Perez is a citizen of Georgia residing in Glynn County, Georgia.  Mr. Perez purchased a used 2012 Audi Q7 3.0 gasoline vehicle from VW of St. Augustine in St. Augustine, St. Johns County, Florida.

68.     Ernesto Pozo and Maria Pozo are citizens of Florida residing in Marion County, Florida.  The Pozos purchased a 2013 Audi A8 3.0 gasoline vehicle from Audi South Orlando in Orlando, Orange County, Florida.

69.     Bradley Retherford is a citizen of Florida residing in Pinellas County, Florida.  Mr. Retherford purchased a used 2013 Audi Q5 3.0 gasoline vehicle from Audi Clearwater in Clearwater, Florida.

70.     Patrick Roark is a citizen of Florida residing in Hillsborough County, Florida.  Mr. Retherford purchased a used 2013 Audi A8 3.0 gasoline vehicle from Audi Clearwater in Clearwater, Pinellas County, Florida.

71.     Amy Roberts is a citizen of Florida residing in Miami-Dade County, Florida.  Ms. Roberts leased a new 2014 Audi Q7 3.0 gasoline vehicle from The Collection in Coral Gables, Miami-Dade County, Florida.

72.     Marc Sacheli is a citizen of Florida residing in Miami-Dade County, Florida.  Mr. Sacheli purchased a new 2012 Audi Q5 3.0 gasoline vehicle from Prestige Audi in North Miami, Miami-Dade County, Florida.

73.     April Sharp is a citizen of Florida residing in Miami-Dade County, Florida.  Ms. Sharp leased a 2015 Audi SQ5 3.0 gasoline vehicle from Audi Pembroke Pines in Pembroke Pines, Broward County, Florida.

74.     Scott Winans is a citizen of Florida residing in Lee County, Florida.  Mr. Winans purchased a 2013 Audi S5 3.0 gasoline vehicle from Audi Fort Meyers in Fort Meyers, Lee County, Florida.

75.     Plaintiff Valesca Wright is a citizen of Florida residing in Alachua County, Florida.  Ms. Wright leased a new 2015 Audi Q7 3.0 gasoline vehicle on behalf of her company, Plaintiff Clean Touch Group, Inc., from Audi of South Orlando in Orlando, Florida.  Clean Touch Group is a corporation organized and existing under the laws of Florida with its principal place of business in Gainesville, Alachua County, Florida.

76.     Valerie Zinna is a citizen of Florida residing in Manatee County, Florida.  Ms. Zinna purchased a used 2013 Audi A8 3.0 gasoline vehicle from Courtesy Toyota in Tampa, Hillsborough County, Florida.

77.     Marc Zipper is a citizen of Florida residing in Seminole County, Florida.  Mr. Zipper leased a new 2013 Audi A8 3.0 gasoline vehicle from Audi of Melbourne in Melbourne, Brevard County, Florida.

78.     Lorraine Hixson is a citizen of Florida residing in Lake County, Florida.  Ms. Hixson purchased a used 2015 Audi A8 3.0 gasoline vehicle from Audi in South Orlando, Orange County, Florida.

79.     John Cornell is a citizen of Florida residing in Lee County, Florida.  Mr. Cornell purchased a new 2013 Audi A6 3.0 gasoline vehicle from Audi in Ft. Myers, Lee County, Florida.

80.     Cathy Carpenter is a citizen of Florida residing in Orange County, Florida.  Ms. Carpenter purchased a new 2012 Audi A6 3.0 gasoline vehicle from Classic Audi in North Orlando, Seminole County, Florida.

81.     Patricia Gonzalez is a citizen of Florida residing in Miami-Dade County, Florida. Ms. Gonzalez purchased a new 2016 Audi Q5 3.0 gasoline vehicle from Audi in North Miami, Miami-Dade County, Florida.

82.     Frederick Wenham is a citizen of Florida residing in Hillsborough County, Florida.  Mr. Wenham purchased a used 2013 Audi A6 3.0 gasoline vehicle from Kuhn VW in Tampa, Hillsborough County, Florida.

83.     Joe Sloboda is a citizen of Florida residing in Broward County, Florida.  Mr. Sloboda purchased a new 2014 Audi A7 3.0 gasoline vehicle from Audi in Lighthouse Point, Broward County, Florida.

84.     Alvin and Sontoria Wiggins are citizens of Florida residing in Escambia County, Florida.  Mr. and Mrs. Wiggins purchased a used 2013 Audi A7 3.0 gasoline vehicle from Prestige Gallery in Tallahassee, Leon County, Florida.

85.     Warren Whittaker is a citizen of Florida residing in Polk County, Florida.  Mr. Whittaker purchased a used 2014 Audi A6 3.0 gasoline vehicle from Audi in North Orlando, Seminole County, Florida.

86.     Kimberly Mkhwane is a citizen of Florida residing in Citrus County, Florida.  Ms. Mkhwane purchased a new 2015 Audi Q7 3.0 gasoline vehicle from Audi in Orlando, Orange County, Florida.

87.     Walter Alvarado is a citizen of Florida residing in Miami-Dade County, Florida. Mr. Alvarado purchased a new 2012 Audi A6 3.0 gasoline vehicle from The Collection in Coral Gables, Miami-Dade County, Florida.

88.     John Anderson is a citizen of Florida residing in Lee County, Florida.  Mr. Anderson purchased a new 2016 Audi A6 3.0 gasoline vehicle from Audi in Ft. Myers, Lee County, Florida.

89.     Edward Rodriguez is a citizen of Florida residing in Miami-Dade County, Florida. Mr. Rodriguez purchased a new 2015 Audi A8 3.0 gasoline vehicle from Prestige in North Miami Beach, Miami-Dade County, Florida.

90.     Oliver Jenkins is a citizen of Florida residing in Broward County, Florida.  Mr. Jenkins purchased a used 2015 Audi A6 3.0 gasoline vehicle from Audi in Ft. Lauderdale, Broward County, Florida.

91.     Phillip Rascoe is a citizen of Florida residing in Hernando County, Florida.  Mr. Rascoe purchased a used 2013 Audi S5 3.0 gasoline vehicle from Audi in Tampa, Hillsborough County, Florida.

92.     Jignesh and Kaishma Patel are citizens of Mississippi residing in DeSoto County, Mississippi.  Mr. & Mrs. Patel purchased a new 2014 Audi S5 3.0 gasoline vehicle from Audi in Pembroke Pines, Broward County, Florida.

93.     Jason Calvo is a citizen of Georgia residing in Cobb County, Georgia.  Mr. Calvo purchased a used 2013 Audi S7 4.0 gasoline vehicle from Discovery Auto Center in Tampa, Hillsborough County, Florida.

94.     Christine Morris is a citizen of Colorado residing in Pitkin County, Colorado. Ms. Morris purchase a used 2012 Audi Q7 3.0 gasoline vehicle from Reeves in Tampa, Hillsborough County, Florida.

**Indiana Plaintiffs**

95.     Nicholas and Lauren Ferro are citizens of Indiana residing in Floyd County, Indiana.  The Ferros purchased a used 2015 Audi Q7 3.0 gasoline vehicle.

96.     Richard Perry is a citizen of Indiana residing in Lake County, Indiana.  Mr. Perry purchased a used 2013 Audi A8 3.0 gasoline vehicle from Team Audi in Merrillville, Lake County, Indiana.

97.     Tamara Scott and Mathew Scott are citizens of Indiana residing in Allen County, Indiana.  The Scott purchased a used 2013 Audi Q5 3.0 gasoline vehicle from O'Daniel Audi in Fort Wayne, Allen County, Indiana.

98.     Brad Bolinger is a citizen of Indiana residing in Hamilton County, Indiana.  Mr. Bolinger purchased a used 2013 Audi S5 3.0 gasoline vehicle from Audi in Westmont, DuPage County, Indiana.

99.     Walt DeArmitt is a citizen of Indiana residing in Bartholomew County, Indiana.  Mr. DeArmitt purchased a new 2014 Audi A6 3.0 gasoline vehicle from Tom Wood Auto Group in Indianapolis, Marion County, Indiana.

**Iowa Plaintiffs**

100.     Tina Olsen is a citizen of Iowa residing in Scott County, Iowa.  Ms. Olsen purchased a used 2012 Audi A6 3.0 gasoline vehicle from Richardson Buick Cadillac in Dubuque, Dubuque County, Iowa.

**Defendants**

101.   Defendant Audi of America, LLC ("Audi America") is a Delaware limited liability company with its principal place of business located at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171.  Audi America is a citizen of Delaware and Virginia. See 28 U.S.C. § 1332(d)(10).  Audi America is a wholly owned United States subsidiary of Audi AG, and it engages in business, including the advertising, marketing, and sale of Audi automobiles, in all 50 states.

102.   Defendant Audi AG ("Audi AG") is a German corporation with its principal place of business in Ingolstadt, Germany. Audi AG is the parent of Audi of America, LLC and a subsidiary of the Audi Group, which is a wholly owned subsidiary of Volkswagen AG. Audi AG directly controls and directs the actions of Audi of America, LLC. Audi AG designs, develops, manufacturers, and sells luxury automobiles.  According to Audi AG, the Audi Group sold more than 200,000 vehicles in the United States in 2015.

**FACTUAL BACKGROUND**

103.   Audi and its parent company, Volkswagen AG, have a long and sordid history of using defeat devices to falsify emissions test results.  In September 2015, the Environmental Protection Agency ("EPA") and the California Air Resources Board ("CARB") issued notices of violation accusing Volkswagen and Audi of equipping their diesel vehicles with illegal defeat devices to fake passing emissions results on their "Clean Diesel" vehicles. Those defeat devices allowed Volkswagen and Audi's diesel vehicles to detect government testing conditions and limit nitrous oxide ("NOx") while being tested.  But, during normal driving conditions, the diesel engines emitted NOx well above the legal limits.  Volkswagen and Audi were forced to admit the existence of these defeat devices.  This led to litigation and a multi-billion dollar

settlement—one of the largest in U.S. history.  Volkswagen and Audi's conduct also led to criminal prosecutions.  Volkswagen AG pled guild to three criminal felonies and paid a $2.8 billion criminal penalty (on top of substantial civil penalties).

104.    Unfortunately, Audi's use of illegal defeat devices was not limited to diesel vehicles.  In July 2016, CARB discovered that Audi had also secretly installed defeat devices on some of its gasoline vehicles to limit $CO_2$ during emissions testing.   Just like the defeat devices used to falsify NOx emissions on its diesel vehicles, Audi used defeat devices in the Fraudulent Vehicles' to evade U.S. emissions standards.

105.    Audi installed defeat devices in vehicles equipped with one of two automatic transmissions with the internal designations AL 551 and DL 501 through May 2016.  The AL 551 transmission is an eight-speed transmission that Audi sourced from transmission supplier ZF Friedrichshafen (a/k/a ZF).  Audi obtained The DL 501 transmission from Volkswagen. Audi A6, A7, A8, Q5, Q7, S4, S5, S6, S7, and S8 gasoline models are equipped with the AL 551 and DL 501 transmissions that contain the defeat devices at issue in this lawsuit.

106.    Volkswagen and Audi knew that emissions and fuel consumption are critical factors that consumers use to decide what cars to purchase.  Audi told consumers that its vehicles used less fuel and emitted less $CO_2$ than the cars actually do in normal driving conditions.

107.    Audi hid its deception by programming its engines with different modes.  One of these modes—which Audi deceptively called the "warm-up" mode—used significantly less fuel and emitted much less $CO_2$, but also delivered significantly less power.  The "warm up" mode activates when the Fraudulent Vehicles are started.  While the "warm-up" function is on, the automatic transmission remains in a "switching program" that reduces the engine speed, consumes less fuel, and produces less $CO_2$.

108.     Audi's use of the "warm up" mode was not limited to start up.  Audi also used this mode to falsify emissions test results. Audi engineers determined that the only time the Fraudulent Vehicles would run continuously with no steering wheel input was during examination in a lab, on a test bed. The vehicles' transmission control modules ("TCM") therefore set "shift points" that allow the vehicles to detect those lab conditions and to produce compliant emission results under those conditions (known by Volkswagen as the "dyno calibration" mode).[1]   Under these static dynamometer lab conditions (a vehicle treadmill), the defeat devices enable the Fraudulent Vehicles to operate in this low power mode.  This low power mode is also known as the "low $CO_2$" program.  It works by causing the Fraudulent Vehicles to shift gears early to artificially lower engine revs and emissions.

109.     During normal driving conditions, the transmission computer switches to "road calibration" mode.  In contrast to "low $CO_2$" mode, the "road calibration" mode gives full power to the driver, resulting in increased fuel consumption and greater $CO_2$ emissions.  The road calibration mode switches on when the driver turns the steering wheel 15 degrees.  That usually happens seconds after a car is started in normal driving conditions.

110.     Audi used the defeat devices to deceive governmental authorities and consumers about the Fraudulent Vehicles' true fuel consumption and $CO_2$ emissions.  A vehicle's advertised fuel economy (listed on its "Monroney Sticker") is determined by driving a vehicle over five standardized driving patterns (or drive cycles).  These driving patterns are tested in a laboratory on a dynamometer where the conditions for all tests can be controlled.  These driving cycles

---

[1] The defeat device software is part of the TCM.  The TCM is designed to establish shift logic by reacting to signals from sensors monitoring coolant temperature, exhaust temperature, ignition timing, crankshaft and camshaft positioning, fuel mixture and air flow volumes. The TCM and engine control unit ("ECU") work together to implement the cheating function. Audi engineers intentionally put the cheat software in the TCM unit to make the defeat device more difficult to detect.

include cold starts, hot starts, highway driving, aggressive high-speed driving, and driving with the air conditioner in use.  The defeat device software is located in the TCM.  The engineers imbedded the cheat software in the TCM unit, to make it difficult to detect.

111.    The TCM is designed to establish shift logic by responding to signals from sensors monitoring coolant temperature, exhaust temperature, ignition timing, crankshaft and camshaft positioning, fuel mixture and air flow volumes. The TCM and engine control unit ("ECU") work together to cheat on emissions tests. Data from the five drive cycles are combined and adjusted for "real world" conditions in a way to represent "City" driving and "Highway" driving.  The "combined" fuel economy is the average of the City and Highway values with weights of 55% and 45% respectively. These adjusted and combined values appear on the vehicle's Monroney sticker.

112.    The drive cycles are performed on a dynamometer in a lab while the Fraudulent Vehicles' "low $CO_2$" mode is activated.  During each cycle, pollutants are measured.  This includes un-combusted or partially combusted gasoline (hydrocarbons or HC), carbon monoxide (CO) and carbon dioxide ($CO_2$).  The amount of carbon produced is then converted to the amount of gasoline that was required to produce the carbon in the exhaust.  The amount of gasoline produced during the tests is divided into the distance driven on the test to produce the fuel economy.

113.    Mathematically, as the amount of $CO_2$ produced increases, a vehicle gasoline uses more gasoline and the fuel economy decreases. Therefore, if a Defective Vehicle produces less $CO_2$ during laboratory testing (while in "low $CO_2$" mode) but higher $CO_2$ when driven on the road, then the vehicle would have a higher estimated fuel economy rating on the Monroney sticker than the vehicle would actually have while being driven.

114.     This is how Audi's defeat devices worked in the Fraudulent Vehicles.  The defeat device program gives the Fraudulent Vehicles two modes. The "dyno calibration" mode lowers fuel supply and limits revolutions per minute ("rpms") per gear, which curtails fuel burn and lowers emissions.  The "low $CO_2$" or "dyno calibration" mode is activated during all of the laboratory testing used to calculate the Fraudulent Vehicles' supposed fuel economy.  On the other hand, the "road calibration" mode allows the engine to turn maximum rpms in each gear and furnishes the necessary—greatly increased—fuel supply required to deliver advertised torque and performance. The "road calibration" mode is active during all normal driving.

115.     Audi knew what it was doing.  In fact, it commissioned its own study, which found that a vehicles' fuel consumption on the road increased by 8.5 percent after the wheel was turned.  Audi executives knew how the defeat device worked, and instructed company employees to utilize it to deceive regulators and consumers.  Volkswagen and Audi management discussed the defeat device software in detail, for example, during a "Summer Drive" event in South Africa in the second half of February 2013. According to the event minutes, Axel Eiser, then the head of Audi's powertrain division (and currently the head of powertrain development of the entire Volkswagen group) asked: "When will we have the cycle optimized shift program?" He continued: "The shifting program shall be designed to be 100% active on the dyno, but only 0.01% in the hands of the customer."[2]   The meaning of Mr. Eiser's statement is crystal clear— Audi executives intentionally used the defeat device to deceive regulators and consumers by activating the "low $CO_2$" or "dyno calibration" mode in testing conditions.  This practice is highly deceptive and illegal.

---

[2] Kayhan Oezgenc and Jan C. Wehmeyer, *This is How the Manufacturer Cheated on $CO_2$*, Bild am Sonntag (November 5, 2016) http://www.bild.de/bild-plus/auto/auto-news/audi/so-schummelte-der-hersteller-bei-co-48621300.bild.html

## TOLLING OF THE STATUTE OF LIMITATIONS

### Discovery Rule Tolling

116.     Plaintiffs could not have discovered through reasonable diligence that their Fraudulent Vehicles were defective within the time period of any applicable statutes of limitation.  Plaintiffs did not know and could not have known until November 7, 2016, the time when published reports first revealed that the Fraudulent Vehicles are equipped with defeat devices.  Plaintiffs' claims did not accrue until they discovered that the defeat device caused the Fraudulent Vehicles to fail required emissions standards.

### Fraudulent Concealment Tolling

117.     At all relevant times, Audi concealed the existence of the defeat devices from Plaintiffs and failed to disclose any information to Plaintiffs about the defeat devices on the Fraudulent Vehicles.  Audi deliberately hid the information that Plaintiffs needed to discover the existence of the defeat devices at an early time using reasonable diligence.  Despite knowing that its vehicles contained illegal defeat devices, Audi continued to manufacture, market, distribute, lease, and/or sell the Fraudulent Vehicles to Plaintiffs.  This conduct amounted to concealment and failure to notify Plaintiffs about any facts that would have alerted Plaintiffs to the existence of the defeat devices on the Fraudulent Vehicles.

118.     Plaintiffs justifiably relied on Audi to disclose these material defects in the Audi vehicles they purchased or leased, as such defects were hidden and not discoverable through reasonable efforts by Plaintiffs.  All applicable statutes of limitation have been tolled and suspended with respect to Plaintiffs' claims arising from the existence of the defeat devices on the Fraudulent Vehicles by virtue of the fraudulent concealment doctrine.

**Estoppel**

119.    Audi was under a continuous duty to disclose to Plaintiffs the existence of the defeat devices.  The existence of the defeat devices has had a substantial, negative effect on the character, quality, performance, and nature of the Fraudulent Vehicles. Audi actively hid the true character, quality, performance, and nature of the defeat device in the Fraudulent Vehicles, and Plaintiffs reasonably relied upon Audi's knowing and active concealment of these facts.  Audi is accordingly estopped from relying on any statute of limitations in defense of this action.  For these same reasons, Audi is estopped from relying upon any warranty mileage and age limitations in defense of this action.

## CLAIMS FOR RELIEF

## COUNTS COMMON TO ALL PLAINTIFFS

### COMMON COUNT 1
### VIOLATION OF MAGNUSON MOSS WARRANTY ACT,
### (15 U.S.C. §§ 2301, *et seq.*)
### (On Behalf of all Plaintiffs)

120.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

121.    This Court has jurisdiction to decide claims brought under the Magnuson-Moss Warranty Act (for the purpose of this Count, the "Act") by virtue of 28 U.S.C. § 1332(a)-(d).

122.    Defendants are "supplier[s]" and "warrantor[s]" within the meaning of 15 U.S.C. § 2301(4) and (5) because they regularly sell Audi vehicles accompanied by the written Limited Warranties.

123.    Plaintiffs are "consumers" who purchased "consumer products" for purposes of 15 U.S.C. § 2301(1) and (3) because they purchased Fraudulent Vehicles for personal, family, or household purposes.

124.    The Fraudulent Vehicles are "consumer products" within the meaning of the Act. 15 U.S.C. § 2301(1).

125.    The Act provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.  15 U.S.C. § 2310(d)(1)

126.     The amount in controversy of the Plaintiffs' individual claims meets or exceeds $25.00 in value.  In addition, the amount in controversy meets or exceeds $50,000 in value (exclusive of interest and costs) on the basis of all claims to be determined in this suit.

127.    Under the Act, damaged "consumers" have a private cause of action against any warrantor that fails to comply with a written or implied warranty.

128.    Audi provided Plaintiffs with two express warranties:  (1) "bumper-to-bumper" limited express warranty coverage for a minimum of four years or 50,000 miles, whichever comes first, and which covers emission related repairs; and (2) a federal emissions warranty that covers the repair and replacement of all emission control and emission- related parts for two years or 24,000 miles (whichever comes first), and covers specified major emission control components, including catalytic converters, electronic emissions control unit or computer and on-board emissions diagnostic device or computer for 8 years or 80,000 miles (whichever comes first). These express warranties constitute written warranties within the meaning of 15 U.S.C. § 2301(6).  The Fraudulent Vehicles' implied warranties are covered by 15 U.S.C. § 2301(7).

129.    The terms of the written warranties and implied warranties became part of the basis of the bargain between Plaintiffs when deciding to purchase a Defective Vehicle.

130.   Audi breached these written and implied warranties as described in detail above. Without limitation, the Fraudulent Vehicles share a common design defect in that they emit more carbon dioxide than: (a) is allowable under the applicable regulations, and (b) Audi represented were emitted to their customers, the public, and regulators.

131.   Plaintiffs have had sufficient direct dealings with either Audi or its agents (including Audi dealerships) to establish privity of contract between Audi, on the one hand, and Plaintiffs, on the other hand. Nonetheless, privity is not required here because Plaintiffs are intended third-party beneficiaries of contracts between Audi and its dealers, and specifically, of Audi's implied warranties. The dealers were not intended to be the ultimate consumers of the Fraudulent Vehicles and have no rights under the warranty agreements provided with the Fraudulent Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

132.   Affording Audi a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here. At the time of sale or lease of each Defective Vehicle, Audi knew, should have known, or was reckless in not knowing of its misrepresentations concerning the Fraudulent Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the design defect.  Under the circumstances, the remedies available under any informal settlement procedures would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Audi a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

133.   As a direct and proximate result of Audi's breach of the written warranties and the implied warranty of merchantability, Plaintiffs have suffered damages in an amount to be determined at trial.

134.    Plaintiffs seek all damages permitted by law, including:  compensation for the monetary difference between the Fraudulent Vehicles as warranted and as sold; compensation for the reduction in resale value; the cost of purchasing, leasing, or renting replacement vehicles; other incidental and consequential damages; statutory attorney fees; and all other relief allowed by law.

**COMMON COUNT 2**
**FRAUD**
**(On Behalf of all Plaintiffs)**

135.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

136.    As alleged above, Defendants intentionally concealed and suppressed material facts concerning the illegality and quality of the Fraudulent Vehicles in order to defraud and mislead both regulators and Plaintiffs about the true nature of the Fraudulent Vehicles. Defendants accomplished their scheme by installing, aiding in the installation of, and/or failing to disclose the defeat devices in the Fraudulent Vehicles that caused the vehicles to operate in a low-emission test mode only during testing. During normal operation and use, the Fraudulent Vehicles emitted significantly larger quantities of carbon dioxide.  The result was precisely what Audi intended— the Fraudulent Vehicles were able to pass emission testing by way of deliberately induced false readings.  Defendants, thus, successfully imported, sold, and/or leased thousands of Fraudulent Vehicles to unwitting American consumers.

137.    Audi falsely represented that the Fraudulent Vehicles had functioning emissions systems that operated within legal limits during normal driving conditions.

138.    Audi's false representations and omissions were material to consumers, as they concerned the legality and marketing features of the Fraudulent Vehicles.

139.     Plaintiffs reasonably relied on Audi's deception, and Audi intended that they would so rely. Plaintiffs had no way of discerning that Defendants were, in fact, deceiving them because the defeat devices were sophisticated technology that could not be discerned by regulators, much less consumers.

140.     Audi's scheme to design and install defeat device software in the Fraudulent Vehicles for the specific purpose of circumventing U.S. law, and then concealing their fraudulent scheme, reveals a corporate culture that emphasized sales and profits over integrity and public health.

141.     Audi had a duty to disclose the defeat devices to regulators and the public.

142.     Audi hatched the deceptive scheme and knew that its customers, including Plaintiffs, did not know about, and could not reasonably discover, its scheme.

143.     Plaintiffs were not aware of the concealed and misrepresented material facts referenced above, and they would not have acted as they did had regulators or the driving public known the truth.

144.     As a direct and proximate result of Audi's fraudulent scheme, Plaintiffs sustained damages.  They own or lease Fraudulent Vehicles that are non-compliant and severely diminished in value as compared to the vehicles that were advertised or marketed. Moreover, the Fraudulent Vehicles either cannot be repaired to comply with applicable emissions standards, or if they can be made compliant, their performance, fuel efficiency, and longevity will be compromised.

145.     Audi is liable to Plaintiffs for damages in an amount to be proven at trial. Moreover, because Audi acted wantonly, maliciously, oppressively, recklessly, deliberately, and with intent to defraud Plaintiffs for the purpose of enriching themselves to Plaintiffs' detriment;

therefore, Audi's conduct warrants substantial punitive and exemplary damages in an amount to be determined at trial.

**COMMON COUNT 3**
**BREACH OF CONTRACT**
**(On Behalf of all Plaintiffs)**

146.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

147.    Every purchase or lease of a Defective Vehicle from an authorized dealer of Audi constitutes a contract between Audi and the purchaser or lessee. Audi materially breached these contracts by selling or leasing Plaintiffs defective, non-compliant Fraudulent Vehicles and by misrepresenting or failing to disclose the existence of the defeat device, rendering the Fraudulent Vehicles substantially less valuable than the vehicles that the Defendants advertised and promised to deliver to Plaintiffs.

148.    Audi's misrepresentations and omissions alleged herein caused Plaintiffs to enter into their agreements to purchase or lease their Fraudulent Vehicles. Absent those misrepresentations and omissions, Plaintiffs would not have purchased or leased their Fraudulent Vehicles and/or would not have purchased or leased their Fraudulent Vehicles at the prices they paid. Accordingly Plaintiffs overpaid for their Fraudulent Vehicles and did not receive the benefit of their bargain.

149.    Audi also breached their implied covenant of good faith and fair dealing under the laws of all 50 states and the District of Columbia.  By delivering a vehicle that contained defeat device software and thus exceeded, during normal use, federal and state emission limits, Audi violated Plaintiffs' fair and reasonable expectations under their respective contracts.  In addition,

Audi's misrepresentations and omissions violated Audi's implied duty to deal honestly, and within reasonable commercial standards of fair dealing, with Plaintiffs.

150.   As a direct and proximate result of Audi's breach, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**COMMON COUNT 4**
**UNJUST ENRICHMENT**
**(On Behalf of all Plaintiffs)**

151.   Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

152.   Audi benefitted from selling and leasing, at an unjust profit, Fraudulent Vehicles that had artificially inflated values due to Audi's concealment of the defeat devices, and Plaintiffs have overpaid for these vehicles.

153.   Audi received and retained unjust benefits from the Plaintiffs and inequity has resulted.

154.   It is inequitable and unconscionable for Audi to retain these benefits.

155.   Because Audi concealed their fraud and deception, Plaintiffs were not aware of the true facts concerning the Fraudulent Vehicles and did not benefit from Audi's misconduct.

156.   Audi knowingly accepted the unjust benefits of their fraudulent conduct.

157.   As a result of Audi's misconduct, the amount of their unjust enrichment should be disgorged and returned to Plaintiffs in an amount to be proven at trial.

**<u>ALABAMA COUNTS</u>**

**ALABAMA COUNT 1:**
**VIOLATIONS OF ALABAMA DECEPTIVE TRADE PRACTICES ACT**
**(Ala. Code § 8-19-1, et seq.)**
**(On Behalf of the Alabama Plaintiffs)**

158.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

159.    Plaintiffs are "consumers" within the meaning of Ala. Code § 8-19-3(2).

160.    Plaintiffs and Audi are "persons" within the meaning of Ala. Code § 8-19-3(5).

161.    The Fraudulent Vehicles are "goods" within the meaning of Ala. Code § 8-19-3(3).

162.    Audi was and is engaged in "trade or commerce" within the meaning of Ala. Code § 8-19-3(8).

163.    The Alabama Deceptive Trade Practices Act ("Alabama DTPA") declares several specific actions to be unlawful, including: "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have," "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," and "(27) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5.

164.    In the course of their business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and

misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

165.    Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

166.    Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

167.    Audi knew or should have known that its conduct violated the Alabama DTPA.

168.    Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

    a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

    b.    intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

    c.    made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

169.    Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

170.    Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

171.     Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

172.     Audi's violations present a continuing risk to Plaintiffs as well as to the general public.  Audi unlawful acts and practices complained of herein affect the public interest.

173.     As a direct and proximate result of Audi's violations of the Alabama DTPA, Plaintiffs have suffered injury-in-fact and/or actual damage.

174.     Pursuant to Ala. Code § 8-19-10, Plaintiffs seek monetary relief against Audi measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $100 for each Plaintiff.

175.     Plaintiffs also seek an order enjoining Audi's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Ala. Code § 8-19-1, et seq.

176.     Audi failed to remedy its unlawful conduct within the requisite time period. Therefore, Plaintiffs seek all damages and relief to which Plaintiffs are entitled.

**ALABAMA COUNT 2:**
**BREACH OF EXPRESS WARRANTY**
**(Ala. Code §§ 7-2-313 and 7-2A-210)**
**(On Behalf of the Alabama Plaintiffs)**

177.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

178.    Audi is and was at all relevant times a "merchant" with respect to motor vehicles under Ala. Code §§ 7-2-104(1) and 7-2A-103(3), and a "seller" of motor vehicles under § 7-2-103(1)(d).

179.    With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under Ala. Code. § 7-2A-103(1)(p).

180.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Ala. Code §§ 7-2-105(1) and 7-2A-103(1)(h).

181.    As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.  The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

182.    As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

183.    As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## ALABAMA COUNT 3:
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Ala. Code §§ 7-2-314 and 7-2A-212)
### (On Behalf of the Alabama Plaintiffs)

184.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

185.    Audi is and was at all relevant times a "merchant" with respect to motor vehicles under Ala. Code §§ 7-2-104(1) and 7-2A-103(3), and a "seller" of motor vehicles under § 7-2-103(1)(d).

186.    With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under Ala. Code. § 7-2A-103(1)(p).

187.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Ala. Code §§ 7-2-105(1) and 7-2A-103(1)(h).

188.    A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ala. Code §§ 7-2-314 and 7-2A-212.

189.    The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

190.    As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## ALASKA COUNTS

### ALASKA COUNT 1:
### VIOLATIONS OF THE ALASKA UNFRAIR TRADE
### PRACTICES AND CONSUMER PROTECTION ACT
### (Alaska Stat. § 45550.471 *et. seq.*)
### (On behalf of the Alaska Plaintiffs)

191.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

192.    The Alaska Unfair Trade Practices And Consumer Protection Act ("Alaska CPA") declares unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce unlawful, including: "(4) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits,. or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" "(6) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" "(8) advertising goods or services with 'intent not to sell them as advertised;" or "(12) using or employing deception, fraud, false pretense, false promise, misrepresentation or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged." Alaska Stat. § 45.50.471.

193.    In the course of its business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

194.     Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

195.     Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

196.     Audi knew or should have known that its conduct violated the Alaska CPA CPA.

197.     Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

   a.  possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

   b.  intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

   c.   made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

198.     Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

199.      Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

200.     Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have

purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

201.    As a direct and proximate result of Defendants' violations of the Alaska CPA,

202.    Plaintiffs have suffered injury-in-fact and/or actual damage.

203.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

204.    As a direct and proximate result of Defendants' violations of the Alaska CPA, Plaintiffs have suffered injury-in-fact and/or actual damage.

205.    Pursuant to Alaska Stat. § 45.50. 531, Plaintiffs seek monetary relief against Defendants measured as the greater of (a) three times the actual damages in an amount to be determined at trial or (b) $500 for each Plaintiff.

206.    Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices pursuant to Alaska Stat. § 45.50.535, attorneys' fees, and any other just and proper relief available under the Alaska CPA.

### ALASKA COUNT 2:
### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
#### (Alaska Stat. §§ 4502.314 and 45.12.212)
#### (On behalf of the Alaska Plaintiffs)

207.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

208.    The Defendants are and were at all relevant times "merchant[s]" under Alaska Stat. §§ 45.02.104(a) and 45.12.103(c)(1 1); and are "seller[s]" of motor vehicles under Alaska Stat. § 45.02.103(a)(4).

209.    With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under Alaska Stat. § 45.12.103(a)(16).

210.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Alaska Stat. §§ 45.02.105(a) and 45.12.103(a)(8).

211.    A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Alaska Stat. §§ 45.02.314 and 45.12.212.

212.    The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

213.    As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**ALASKA COUNT 3:**
**BREACH OF EXPRESS WARRANTY**
**(Alaska Stat. §§ 45.02.313 and 45.12.210)**
**(On behalf of the Alaska Plaintiffs)**

214.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

215.    The Defendants are and were at all relevant times "merchants" under Alaska Stat. §§ 45.02.104(a) and 45.12.103(c)(11); and "sellers" of motor vehicles under Alaska Stat. § 4502.103(a)(4).

216.     With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under Alaska Stat. § 45.12.103(a)(16). ·

217.     The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Alaska Stat. §§ 45.02.105(a) and 45.12.103(a)(8).

218.     As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.  The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

219.     As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## ARIZONA COUNTS

### ARIZONA COUNT 1:
### VIOLATIONS OF THE CONSUMER FRAUD ACT
### (Ariz. Rev. Stat. § 44-1521, et seq.)
### (On Behalf of the Arizona Plaintiffs)

220.     The Arizona Plaintiff incorporate by reference each preceding paragraph as though fully set forth herein.

221.     Defendants and Plaintiffs are "persons" within the meaning of the Arizona Consumer Fraud Act ("Arizona CFA"), Ariz. Rev. Stat. § 44-1521(6).

222.     The Fraudulent Vehicles are "merchandise" within the meaning of Ariz. Rev. Stat. § 44-1521(5).

223.     The Arizona CFA provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, … misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." Ariz. Rev. Stat. § 44-1522(A).

224.     In the course of their business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

225.     Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

226.     Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

227.   Audi knew or should have known that its conduct violated the Arizona CFA.

228.   Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

    a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

    b.    intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

    c.    made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

229.   Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

230.   Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

231.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

232.   As a direct and proximate result of Defendants' violations of the Arizona CFA, Plaintiffs have suffered injury-in-fact and/or actual damage.

233.     Plaintiffs seek monetary relief against Audi in an amount to be determined at trial. Plaintiffs also seek punitive damages because Audi's engaged in aggravated and outrageous conduct with an evil mind.

234.     Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

### ARIZONA COUNT 2:
### BREACH OF EXPRESS WARRANTY
### (Ariz. Rev. Stat. §§ 47-2313 and 47-2A210)
### (On Behalf of the Arizona Plaintiffs)

235.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

236.     Audi is and was at all relevant times a "merchant" with respect to motor vehicles under Ariz. Rev. Stat. §§ 47-2104(A) and 47-2a103(c); and is a "seller" of motor vehicles under Ariz. Rev. Stat. § 47-2103(A)(4).

237.     With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under Ariz. Rev. Stat. § 47-2a103(A)(16).

238.     The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Ariz. Rev. Stat. §§ 47-2105(A) and 47-2a103(A)(8).

239.     As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.  The installation of the

defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

240.    As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

241.    As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

**ARIZONA COUNT 3:**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Ariz. Rev. Stat. §§ 47-2314 and 47-2A212)**
**(On Behalf of the Arizona Plaintiffs)**

242.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

243.    Audi is and was at all relevant times a "merchant" with respect to motor vehicles under Ariz. Rev. Stat. §§ 47-2104(A) and 47-2a103(c); and is a "seller" of motor vehicles under Ariz. Rev. Stat. § 47-2103(A)(4).

244.    With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under Ariz. Rev. Stat. § 47-2a103(A)(16).

245.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Ariz. Rev. Stat. §§ 47-2105(A) and 47-2a103(A)(8).

246.    A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ariz. Rev. Stat. §§ 47-2314 and 47-2a212.

247.    The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with

defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

248.     As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## ARKANSAS COUNTS

### ARKANSAS COUNT 1:
### VIOLATIONS OF THE DECEPTIVE TRADE PRACTICE ACT
### (Ark. Code Ann. § 4-88-101, et seq.)
### (On Behalf of the Arkansas Plaintiffs)

249.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

250.     Audi and Plaintiffs are "persons" within the meaning of Arkansas Deceptive Trade Practices Act ("Arkansas DTPA"), Ark. Code Ann. § 4-88-102(5).

251.     The Fraudulent Vehicles are "goods" within the meaning of Ark. Code Ann. § 4-88-102(4).

252.     The Arkansas DTPA prohibits "[d]eceptive and unconscionable trade practices," which include, but are not limited to, a list of enumerated items, including "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade[.]" Ark. Code Ann. § 4-88-107(a)(10). The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; or (2) The concealment, suppression, or

omission of any material fact with intent that others rely upon the concealment, suppression, or omission." Ark. Code Ann. § 4-88-108.

253.    In the course of their business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

254.    Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

255.    Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

256.    Audi knew or should have known that its conduct violated the Arkansas DTPA.

257.    Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

b.    intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

c.      made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

258.    Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

259.    Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

260.    Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

261.    Audi's violations present a continuing risk to Plaintiffs as well as to the general public. Audi's unlawful acts and practices complained of herein affect the public interest.

262.    As a direct and proximate result of  Audi's violations of the Arkansas DTPA, Plaintiffs have suffered injury-in-fact and/or actual damage.

263.    Plaintiffs seek monetary relief against Audi in an amount to be determined at trial. Plaintiffs also seek punitive damages because Audi acted wantonly in causing the injury or with such a conscious indifference to the consequences that malice may be inferred.

264.    Plaintiffs also seek an order enjoining Audi's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

**ARKANSAS COUNT 2:**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Ark. Code §§ 4-2-314 and 4-2A-212)**
**(On Behalf of the Arkansas Plaintiffs)**

265.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

266.    Audi is and was at all relevant times a "merchant" with respect to motor vehicles under Ark. Code §§ 4-2-104(1) and 4-2A-103(3), and a "seller" of motor vehicles under § 4-2-103(1)(d).

267.    With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under Ark. Code § 4-2A-103(1)(p).

268.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Ark. Code §§ 4-2-105(1) and 4-2A-103(1)(h).

269.    A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ark. Code §§ 4-2-314 and 4-2A-212.

270.    The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

271.    As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**ARKANSAS COUNT 3:**
**BREACH OF EXPRESS WARRANTY**
**(Ark. Code Ann. §§ 4-2-313 and 4-2A-210)**
**(On Behalf of the Arkansas Plaintiffs)**

272.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

273.    Audi is and was at all relevant times a "merchant" with respect to motor vehicles under Ark. Code §§ 4-2-104(1) and 4-2A-103(3), and a "seller" of motor vehicles under § 4-2-103(1)(d).

274.    With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under Ark. Code § 4-2A-103(1)(p).

275.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Ark. Code §§ 4-2-105(1) and 4-2A-103(1)(h).

276.    As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.  The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

277.    As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

278.    As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## CALIFORNIA COUNTS

### CALIFORNIA COUNT 1:
### VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT
### BREACH OF IMPLIED WARRANTY
### (Cal Civ. Code §§ 1790, et seq.)
### (On Behalf of the California Plaintiffs)

279.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

280.    Plaintiffs who purchased Fraudulent Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791.

281.    The Fraudulent Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

282.    Audi is the "manufacturer" of the Fraudulent Vehicles within the meaning of Cal. Civ. Code § 1791(j).

283.    Audi impliedly warranted to Plaintiffs that the Fraudulent Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792; however, the Fraudulent Vehicles do not have the quality that a buyer would reasonably expect.

284.    Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1)    Pass without objection in the trade under the contract description.

(2)    Are fit for the ordinary purposes for which such goods are used.

(3)    Are adequately contained, packaged, and labeled.

(4)    Conform to the promises or affirmations of fact made on the container or label.

285.     The Fraudulent Vehicles would not pass without objection in the automotive trade because they share a common design defect in that they are equipped with "defeat devices." These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

286.     Fraudulent Vehicles are not adequately labeled because the labeling fails to disclose the fact that they are defective.

287.     In the various channels of information through which Audi sold Fraudulent Vehicles, Audi failed to disclose material information concerning the Fraudulent Vehicles, which it had a duty to disclose. Audi had a duty to disclose the defect because, as detailed above: (a) Audi knew about the defect; (b) Audi had exclusive knowledge of material facts not known to the general public, Plaintiffs, and (c) Audi actively concealed material facts concerning the fact that the Fraudulent Vehicles were equipped with defeat devices from the general public, Plaintiffs. As detailed above, Audi knew the information concerning the defect at the time of advertising and selling the Fraudulent Vehicles, all of which was intended to induce consumers to purchase the Fraudulent Vehicles.

288.     Audi breached the implied warranty of merchantability by manufacturing and selling Fraudulent Vehicles that are defective.  Furthermore, this defect has caused Plaintiffs to not receive the benefit of their bargain and have caused the Fraudulent Vehicles to depreciate in value.

289.     Plaintiffs have been damaged as a result of the diminished value of Audi's products.

290. Under Cal. Civ. Code §§ 1791.1(d) & 1794, are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Fraudulent Vehicles, or the overpayment or diminution in value of their Fraudulent Vehicles.

291. Under Cal. Civ. Code § 1794, Plaintiffs are entitled to costs and attorneys' fees.

**CALIFORNIA COUNT 2:**
**VIOLATION OF THE SONG-BEVERLY CONSUMER PROTECTION ACT,**
**BREACH OF EXPRESS WARRANTY**
**Cal Civ. Code §§ 1790, *et seq*.**
**(On Behalf of the California Plaintiffs)**

292. Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

293. Plaintiffs who purchased or leased the Fraudulent Vehicles in California are "buyers" within the meaning of California Civil Code § 1791(b).

294. The Fraudulent Vehicles are "consumer goods" within the meaning of California Civil Code § 1791(a).

295. Audi is a "manufacturer" of the Fraudulent Vehicles within the meaning of California Civil Code § 1791(j).

296. Audi made express warranties to Plaintiffs within the meaning of California Civil Code §§ 1791.2 and 1793.2, as described above.

297. As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices." These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses. The installation of the

defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

298.    As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

299.    Pursuant to California Civil Code §§ 1793.2 & 1794, Plaintiffs are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Fraudulent Vehicles, or the overpayment or diminution in value of their Fraudulent Vehicles.

300.    Pursuant to California Civil Code § 1794, Plaintiffs are entitled to costs and attorneys' fees.

**CALIFORNIA COUNT 3:**
**VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT**
**Cal Bus. & Prof. Code §§ 1750, *et seq.***
**(On Behalf of the California Plaintiffs)**

301.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

302.    Plaintiffs were deceived by Audi's failure to disclose that the Fraudulent Vehicles share a uniform defect in that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

303.   Audi engaged in unfair or deceptive acts or practices when, in the course of its business it, among other acts and practices, knowingly made materially incomplete representations as to the characteristics, uses and benefits of the Fraudulent Vehicles.

304.   In the various channels of information through which Audi sold Fraudulent Vehicles, Audi failed to disclose material information concerning the Fraudulent Vehicles, which it had a duty to disclose. Audi had a duty to disclose the defect because, as detailed above, (a) Audi knew about the defeat device equipped on the Fraudulent Vehicles; (b) Audi had exclusive knowledge of material facts not known to the general public, Plaintiffs, and (c) Audi actively concealed material facts concerning the defeat device from the general public, Plaintiffs. As detailed above, Audi knew the information concerning the defect at the time of advertising and selling the Fraudulent Vehicles, all of which was intended to induce consumers to purchase the Fraudulent Vehicles.

305.   Audi intended for the Plaintiffs to rely on it to provide adequately designed, and adequately manufactured automobiles and to honestly and accurately reveal the problems described throughout this Complaint.

306.   Audi intentionally failed or refused to disclose the defect to consumers.

307.   Audi's conduct and deceptive omissions were intended to induce Plaintiffs to believe that the Fraudulent Vehicles were adequately designed and adequately manufactured automobiles.

308.   Audi's conduct constitutes unfair acts or practices as defined by the California Consumers Legal Remedies Act (the "CLRA").

309.   Plaintiffs have suffered injury in fact and actual damages resulting from Audi's material omissions because they paid inflated purchase prices for the Fraudulent Vehicles.

310.     Plaintiffs seek an order enjoining Audi's unfair or deceptive acts or practices, equitable relief, an award of attorneys' fees and costs under Cal. Civ. Code § 1780(e), and any other just and proper relief available under the CLRA.

311.     In accordance with section 1782(a) of the CLRA, Plaintiffs' counsel, on behalf of Plaintiffs, will serve Audi with notice of their alleged violations of Cal. Civ. Code § 1770(a) relating to the Fraudulent Vehicles purchased by Plaintiffs, and demand that Audi corrects or agrees to correct the actions described therein within thirty (30) days of such notice.  If Audi fails to do so, Plaintiffs will amend this Complaint as of right (or otherwise seek leave to amend the Complaint) to include compensatory and monetary damages to which Plaintiffs are entitled.

312.     Audi's conduct described herein is fraudulent, wanton, and malicious.

## COLORADO COUNTS

### COLORADO COUNT 1:
### VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT
### (Col. Rev. Stat. § 6-1-101, et seq.)
### (On Behalf of the Colorado Plaintiffs)

313.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

314.     Audi is a "person" under § 6-1-102(6) of the Colorado Consumer Protection Act ("Colorado CPA"), Col. Rev. Stat. § 6-1-101, et seq.

315.     Plaintiffs are "consumers" for purposes of Col. Rev. Stat § 6-1-113(1)(a) who purchased or leased one or more Fraudulent Vehicles.

316.     The Colorado CPA prohibits deceptive trade practices in the course of a person's business. Audi engaged in deceptive trade practices prohibited by the Colorado CPA, including: (1) knowingly making a false representation as to the characteristics, uses, and benefits of the Fraudulent Vehicles that had the capacity or tendency to deceive the Plaintiffs; (2) representing

that the Fraudulent Vehicles are of a particular standard, quality, and grade even though Audi knew or should have known they are not; (3) advertising the Fraudulent Vehicles with the intent not to sell them as advertised; and (4) failing to disclose material information concerning the Fraudulent Vehicles that was known to Audi at the time of advertisement or sale with the intent to induce the Plaintiffs to purchase, lease or retain the Fraudulent Vehicles.

317.    In the course of their business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

318.    Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

319.    Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

320.    Audi knew or should have known that its conduct violated the Colorado CPA.

321.    Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

a.   possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

b.   intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

c.   made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

322.   Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

323.   Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

324.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

325.   Plaintiffs risk irreparable injury as a result of Audi's act and omissions in violation of the Colorado CPA, and these violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

326.   As a direct and proximate result of Audi's violations of the Colorado CPA, Plaintiffs have suffered injury-in-fact and/or actual damage.

327.     Pursuant to Colo. Rev. Stat. § 6-1-113, Plaintiffs seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and discretionary trebling of such damages, or (b) statutory damages in the amount of $500 for each Plaintiff.

328.     Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

## COLORADO COUNT 2:
### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
(Col. Rev. Stat. §§ 4-2-313 and 4-2.5-212)
(On Behalf of the Colorado Plaintiffs)

329.     Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

330.     Audi is and was at all relevant times a "merchant" with respect to motor vehicles under Colo. Rev. Stat. §§ 4-2-104(1) and 4-2.5-103(3), and a "seller" of motor vehicles under § 4-2-103(1)(d).

331.     With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under Colo. Rev. Stat. § 4-2.5-103(1)(p).

332.     The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Colo. Rev. Stat. §§ 4-2-105(1) and 4-2.5-103(1)(h).

333.     A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Colo. Rev. Stat. § § 4-2-313 and 4-2.5-212.

334.     The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with

defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

335.    As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**COLORADO COUNT 3:**
**BREACH OF EXPRESS WARRANTY**
**(Colo. Rev. Stat. §§ 4-2-313 and 4-2.5-210)**
**(On Behalf of the Colorado Plaintiffs)**

336.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

337.    Audi is and was at all relevant times a "merchant" with respect to motor vehicles under Colo. Rev. Stat. §§ 4-2-104(1) and 4-2.5-103(3), and a "seller" of motor vehicles under § 4-2-103(1)(d).

338.    With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under Colo. Rev. Stat. § 4-2.5-103(1)(p).

339.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Colo. Rev. Stat. §§ 4-2-105(1) and 4-2.5-103(1)(h).

340.    As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.  The installation of the

defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

341.    As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

342.    As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

<u>**CONNECTICUT COUNTS**</u>

**CONNECTICUT COUNT 1:**
**VIOLATIONS OF CONNECTICUT UNLAWFUL TRADE PRACTICES ACT**
**(Conn. Gen. Stat. § 42-110A, et seq.)**
**(On Behalf of the Connecticut Plaintiffs)**

343.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

344.    The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a).

345.    Audi is a "person" within the meaning of Conn. Gen. Stat. § 42-110a(3). Audi is in "trade" or "commerce" within the meaning of Conn. Gen. Stat. § 42-110a(4).

346.    Audi participated in deceptive trade practices that violated the Connecticut UTPA as described herein.

347.    In the course of their business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles

would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

348.    Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

349.    Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

350.    Audi knew or should have known that its conduct violated the Connecticut UTPA.

351.    Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

a.      possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

b.      intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

c.       made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

352.    Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

353.    Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

354.    Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

355.    Audi's violations present a continuing risk to Plaintiffs as well as to the general public.  Audi's unlawful acts and practices complained of herein affect the public interest.

356.    As a direct and proximate result of Defendants' violations of the Connecticut UTPA, Plaintiffs have suffered injury-in-fact and/or actual damage.

357.    Plaintiffs are entitled to recover their actual damages, punitive damages, and attorneys' fees pursuant to Conn. Gen. Stat. § 42-110g.

358.    Audi Defendants acted with a reckless indifference to another's rights or wanton or intentional violation to another's rights and otherwise engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights and safety of others.

### CONNECTICUT COUNT 2:
### BREACH OF EXPRESS WARRANTY
### (Conn. Gen. Stat. Ann. § 42A-2-313)
### (On Behalf of the Connecticut Plaintiffs)

359.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

360.     Audi is and was at all relevant times a merchant with respect to motor vehicles under Conn. Gen. Stat. Ann. § 42a-2-104(1).

361.     As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.  The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

362.     As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

363.     As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## CONNECTICUT COUNT 3:
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Conn. Gen. Stat. Ann. § 42A-2-314)
### (On Behalf of the Connecticut Plaintiffs)

364.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

365.     Audi is and was at all relevant times a merchant with respect to motor vehicles under Conn. Gen. Stat. Ann. § 42a-2-104(1).

366.     A warranty that the Fraudulent Vehicles were in merchantable condition is implied by law in the instant transactions pursuant to Conn. Gen. Stat. Ann. § 42a-2-314.

367.    The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

368.    As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## **FLORIDA COUNTS**

### **FLORIDA COUNT 1:**
### **VIOLATIONS OF FLORIDA'S UNFAIR & DECEPTIVE TRADE PRACTICES ACT**
### **Fla. Stat. § 501.201, et seq.**
### **(On Behalf of the Florida Plaintiffs)**

369.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

370.    Plaintiffs are "consumers" within the meaning of the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), Fla. Stat. § 501.203(7).

371.    Audi is and was engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

372.    FUDTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce …" Fla. Stat. § 501.204(1).  Audi participated in unfair and deceptive trade practices that violated the FUDTPA as described herein.

373.    In the course of their business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat

device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

374.    Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

375.    Audi engaged in misleading, false, unfair or deceptive acts or practices that violated the FUDTPA by designing, installing, failing to disclose and actively concealing the illegal defeat device, the vehicles illegality, and the true nature of the Fraudulent Vehicles.

376.    Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs, about illegality, emissions, and efficiency of the Fraudulent Vehicles, the quality of the Audi brand, and the true value of the Fraudulent Vehicles.

377.    Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Audi misrepresentations and their concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased the vehicles at all, or alternatively, would have paid less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

378.    Audi had an ongoing duty to all Audi customers to refrain from unfair and deceptive practices under the FUDTPA. All owners of Fraudulent Vehicles suffered ascertainable loss in the form of the purchase or lease price as well as the diminished value of their vehicles as a result of Defendants' deceptive and unfair acts and practices.

379.    Plaintiffs risk irreparable injury as a result of Defendants' acts and omissions in violation of the FUDTPA, and these violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

380.    As a direct and proximate result of Audi's violations of the FUDTPA, Plaintiffs has suffered injury-in-fact and/or actual damage.

381.    Plaintiffs are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

382.    Plaintiffs also seek an order enjoining Audi's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the FUDTPA.

**FLORIDA COUNT 2:**
**BREACH OF EXPRESS WARRANTY**
**F.S.A. §§ 672.313 and 680.21**
**(On Behalf of the Florida Plaintiffs)**

383.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

384.    Audi is and was at all relevant times a "merchant" with respect to motor vehicles under F.S.A. §§ 672.104(1) and 680.1031(3)(k), and a "seller" of motor vehicles under § 672.103(1)(d).

385.    With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under F.S.A. § 680.1031(1)(p).

386.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of F.S.A. §§ 672.105(1) and 680.1031(1)(h).

387.    As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.  The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

388.    As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

389.    As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

**FLORIDA COUNT 3:**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(F.S.A. §§ 672.314 and 680.212)**
**(On Behalf of the Florida Plaintiffs)**

390.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

391.    Audi is and was at all relevant times a "merchant" with respect to motor vehicles under F.S.A. §§ 672.104(1) and 680.1031(3)(k), and a "seller" of motor vehicles under § 672.103(1)(d).

392.    With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under F.S.A. § 680.1031(1)(p).

393.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of F.S.A. §§ 672.105(1) and 680.1031(1)(h).

394.    A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to F.S.A. §§ 672.314 and 680.212.

395.    The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

396.    As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## INDIANA COUNTS

### INDIANA COUNT 1:
### VIOLATIONS OF THE INDIANA DECEPTIVE CONSUMER SALES ACT
### (Ind. Code § 24-5-0.5-3)
### (On Behalf of the Indiana Plaintiffs)

397.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

398.    Audi is a "person" within the meaning of Ind. Code § 24-5-0.5-2(2) and a "supplier" within the meaning of Ind. Code § 24-5-.05-2(a)(3).

399.    Plaintiffs' purchases of the Fraudulent Vehicles are "consumer transactions" within the meaning of Ind. Code § 24-5-.05-2(a)(1).

400.    Indiana's Deceptive Consumer Sales Act ("Indiana DCSA") prohibits a person from engaging in a "deceptive act," which includes representing: "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection it does not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style or model, if it is not and if the supplier knows or should reasonably know that it is not; … (7) That the supplier has a sponsorship, approval or affiliation in such consumer transaction that the supplier does not have, and which the supplier knows or should reasonably know that the supplier does not have; … (c) Any representations on or within a product or its packaging or in advertising or promotional materials which would constitute a deceptive act shall be the deceptive act both of the supplier who places such a representation thereon or therein, or who authored such materials, and such suppliers who shall state orally or in writing that such representation is true if such other supplier shall know or have reason to know that such representation was false." Ind. Code § 24-5-0.5-3.

401.    In the course of their business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and

misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

402.    Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

403.    Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

404.    Audi knew or should have known that its conduct violated the Indiana DCSA.

405.    Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

    a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

    b.    intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

    c.     made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

406.    Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

407.     Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

408.    Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material

information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

409.    Audi's violations present a continuing risk to Plaintiffs as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

410.    As a direct and proximate result of Audi's violations of the Indiana DCSA, Plaintiffs have suffered injury-in-fact and/or actual damage.

411.    Pursuant to Ind. Code § 24-5-0.5-4, Plaintiffs seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each Plaintiff, including treble damages up to $1,000 for Audi's willfully deceptive acts.

412.    Plaintiffs also seek punitive damages based on the outrageousness and recklessness of the Audi's conduct and Audi's high net worth.

413.    Audi failed to remedy its unlawful conduct within the requisite time period. Therefore, Plaintiffs seek all damages and relief to which Plaintiffs are entitled.

## INDIANA COUNT 2:
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Ind. Code §§ 26-1-2-314 and 26-1-2.1-212)
### (On Behalf of the Indiana Plaintiffs)

414.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

415.    Audi is and was at all relevant times a "merchant" with respect to motor vehicles under Ind. Code §§ 26-1-2-104(1) and 26-1-2.1-103(3), and a "seller" of motor vehicles under § 26-1-2-103(1)(d).

416.    With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under Ind. Code § 26-1-2.1-103(1)(p).

417.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Ind. Code §§ 26-1-2-105(1) and 26-1-2.1-103(1)(h).

418.    A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ind. Code §§ 26-1-2-314 and 26-1-2.1-212.

419.    The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

420.    As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**INDIANA COUNT 3:**
**BREACH OF EXPRESS WARRANTY**
**(Ind. Code §§ 26-1-2-313 and 26-1-2.1-210)**
**(On Behalf of the Indiana Plaintiffs)**

421.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

422.    Audi is and was at all relevant times a "merchant" with respect to motor vehicles under Ind. Code §§ 26-1-2-104(1) and 26-1-2.1-103(3), and a "seller" of motor vehicles under § 26-1-2-103(1)(d).

423.     With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under Ind. Code § 26-1-2.1-103(1)(p).

424.     The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Ind. Code §§ 26-1-2-105(1) and 26-1-2.1-103(1)(h).

425.     As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.  The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

426.     As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

427.     As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## IOWA COUNTS

### IOWA COUNT 1:
### VIOLATIONS OF THE PRIVATE RIGHT OF ACTION
### FOR CONSUMER FRAUDS ACT
### (Iowa Code § 714h.1, et seq.)
### (On Behalf of the Iowa Plaintiffs)

428.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

429.     Audi is a "person" under Iowa Code § 714H.2(7).

430.    Plaintiffs are "consumers," as defined by Iowa Code § 714H.2(3), who purchased or leased one or more of the Fraudulent Vehicles.

431.    The Iowa Private Right of Action for Consumer Frauds Act ("Iowa CFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise." Iowa Code § 714H.3.

432.    In the course of their business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

433.    Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

434.    Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

435.    Audi knew or should have known that its conduct violated the Iowa CFA.

436.    Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

b.    intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

c.    made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

437.    Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

438.    Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

439.    Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

440.    Audi's violations present a continuing risk to Plaintiffs as well as to the general public. Audi's unlawful acts and practices complained of herein affect the public interest.

441.    As a direct and proximate result of Audi's violations of the Iowa CFA, Plaintiffs have suffered injury-in-fact and/or actual damage.

442.    Pursuant to Iowa Code § 714H.5, Plaintiffs seek an order enjoining Audi's unfair and/or deceptive acts or practices; actual damages; in addition to an award of actual damages, statutory damages up to three times the amount of actual damages awarded as a result of Audi's willful and wanton disregard for the rights or safety of others; attorneys' fees; and such other equitable relief as the Court deems necessary to protect the public from further violations of the Iowa CFA.

**IOWA COUNT 2:**
**BREACH OF EXPRESS WARRANTY**
**(Iowa Code §§ 554.2313 and 554.13210)**
**(On Behalf of the Iowa Plaintiffs)**

443.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

444.    Audi is and was at all relevant times a "merchant" with respect to motor vehicles under Iowa Code §§ 554.2104(1) and 554.13103(3), and a "seller" of motor vehicles under § 554.2103(1)(d).

445.    With respect to leases, Audi is and was at all relevant times a "lessor" of motor vehicles under Iowa Code § 554.13103(1)(p).

446.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Iowa Code §§ 554.2105(1) and 554.13103(1)(h).

447.    As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices." These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use

on the road, they emit a substantially increased amount of noxious gasses.  The installation of the

defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable

consumers.

448.     As a result of Audi's breach of their express warranties, Plaintiffs received goods

whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a

result of, inter alia, the diminished value of Audi's products.

449.     As a direct and proximate result of Audi's breach of express warranties, Plaintiffs

have been damaged in an amount to be determined at trial.

**IOWA COUNT 3:**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Iowa Code §§ 554.2314 and 554.13212)**
**(On Behalf of the Iowa Plaintiffs)**

450.     Plaintiffs re-allege and incorporate by reference all allegations of the preceding

paragraphs as though fully set forth herein.

451.     Audi is and was at all relevant times a "merchant" with respect to motor vehicles

under Iowa Code §§ 554.2104(1) and 554.13103(3), and a "seller" of motor vehicles under §

554.2103(1)(d).

452.     With respect to leases, Audi is and was at all relevant times a "lessor" of motor

vehicles under Iowa Code § 554.13103(1)(p).

453.     The Fraudulent Vehicles are and were at all relevant times "goods" within the

meaning of Iowa Code §§ 554.2105(1) and 554.13103(1)(h).

454.     A warranty that the Fraudulent Vehicles were in merchantable condition and fit

for the ordinary purpose for which vehicles are used is implied by law pursuant to Iowa Code §§

554.2314 and 554.13212.

455.    A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ariz. Rev. Stat. §§ 47-2314 and 47-2a212.

456.    The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

457.    As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request this Court:

A.    Award damages, including compensatory and exemplary damages, to Plaintiffs;

B.    Award Plaintiffs actual damages sustained;

C.    Award Plaintiffs such additional damages, over and above the amount of their actual damages, that are authorized and warranted by law, applicable;

D.    Grant restitution to Plaintiffs and require Defendants to disgorge inequitable gains;

E.    Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Fraudulent Vehicles and to extend the applicable warranties to a reasonable

period of time, or, at a minimum, to provide Plaintiffs with appropriate curative notice regarding the existence and cause of the defect;

F.  Award Plaintiffs punitive damages;

G.  Award Plaintiffs their reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

H.  Award such other relief as this Court deems just and appropriate.

## **<u>JURY DEMAND</u>**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED:  April 27, 2017

HEYGOOD, ORR & PEARSON

By: /s/ *Michael E. Heygood*
MICHAEL E. HEYGOOD,
PSC Member/MDL No. 2672-CRB
Texas Bar No. 00784267
CHARLES MILLER,
ESQ./SBN: 276523
**HEYGOOD, ORR & PEARSON**
6363 North State Highway 161
Suite 450
Irving, Texas 75038
Telephone: (214) 237-9001
Facsimile: (214) 237-9002

Admission *Pro Hac Vice*
to be Sought for:

ERIC D. PEARSON,
Texas Bar No. 15690472
**HEYGOOD, ORR & PEARSON**
6363 North State Highway 161
Suite 450
Irving, Texas 75038
Telephone: (214) 237-9001
Facsimile: (214) 237-9002

**Attorney for Plaintiffs**